Mr. Craven, Mr. Craven, over to you, Ed. We're going to be briefer, I think, than either of the cases before us. I hope you won't complain. The issue that I had planned to devote most of the time to, and in fact devoted most of our brief to, was the sentencing issue, which has now been conceded by the government. So unless the court wants to hear about that, I'll skip that one at this stage. The government filed a Rule 28J letter the day before yesterday and essentially conceded that issue and took the position that the case should be remanded to the district court for re-sentencing. What would be the nature of the remand? It would be... And are you speaking for both defendants? I am speaking for both defendants, and the government now is in agreement with us. The I had argued that it should be remanded because of... I had argued that the court should follow the Ninth Circuit decision in major, M-A-J-O-R, but whichever one of those avenues the court took would reach the same result. It would be remanded for re-sentencing and would save these two young men two to three years. That's all. But two to three years... Well, I thought the government actually was saying this is not a pure Alain problem, but that... I mean, the letter was a little ambiguous. Well, I thought so, too. It clearly was. But I thought what the government was suggesting, as I read the letter, is that we should remand so that the district court can decide whether its jury instructions were sufficient to frame the issue of brandishing for the jury. Well, I, too, thought the letter was a little ambiguous. And frankly, when my colleague from the government got here this morning, Mr. Rollman and I asked him, are we reading this correctly? You know, I'm reading this to say that you're conceding the sentencing issue. And he said, yes, but on a different ground than you suggested in your brief. And I think that's essentially... I hope I'm not quoting you... When you say sentencing issue, are you referring only to count two? Two and four, I believe. Four was using. It wasn't... Well, it makes a difference. It didn't deal with the brandishing. Brandishing is only in count two. Count two is the brandishing one. Right. Yeah. So how does four get into it? Well, it makes a difference which order you take them in. Which is not an Alene problem. But if you take out the... Well, you had four from that, but if you take out the two, I guess... What I'm saying is, essentially, once you take out the brandishing from two, then you've got the same offenses. Right. So you don't have to worry about four. Yeah. We're saying the same thing. If you remove the brandishing from it, yes, indeed. So, I mean, that's pretty clear from that. It seems to me that's what... I don't know, maybe the government... But it seems like to me that's what you're sending it back just for the count two to be considered in the same light as four, so you don't have to deal with this sequential situation here. Yeah. And my argument in the brief had been on the Ninth Circuit case of major. But you don't need that. No, I don't. Now that you've gotten rid of that, now we just... No, I don't need that now. That's done. Right. So what's the problem? Well, as I said at the outset, I'm really not... I was not here to argue the sentencing issue in light of the government's concession. All right. Just on those... Yeah. That count two. Yeah. And he may have a different opinion, but that's what I kind of read it that way. Yeah. No, I think we're on the same page here. All right. And again, I, too, I read the letter... I read it yesterday or Monday night, I guess. And I wasn't entirely clear on it, but I think I am now. And I think we're all on the same page on that now. All right. The one fingerprint cases are interesting. I cited a bunch of them in the brief, half a dozen or so, that if the court were to follow those, and a couple of them came from this court, Van Fossen... This is just Jansen, because this could get a little confusing to me. But you're just talking with one fingerprint on count one and two. Now I'm talking only about Jansen. Count one and count two. That's right. That's where that fingerprint on the duct tape comes in. Right. And the government has now corrected some evidence, so to speak, in there. So go ahead. Go ahead. But I don't think the change in the government's brief is significant on that. I mean, I cited a half a dozen one-fingerprint cases, two of which were from this court. Wait a minute. What do you mean it's not significant? Didn't he say something about that zip tie not being with your client but with the girlfriend? Yeah. And it seems as though the case law here says, well, maybe fingerprint was something else. And the government is arguing that's there, but it seems significant to me that that zip tie is not there. You're right. And, again, I saw the new brief for the first time very recently. I have read it. I've read it a couple times. But you're absolutely right, Judge Wendt, on that. The government focused also on the fact that the gun stolen—well, I'm getting ahead of myself. That really comes into the Butler robbery. Let's stay for now, if I may, on the Lexington robbery, the robbery in which the victim identified Jimmy Strayhorn but did not identify Jansen, but Jansen's partial fingerprint was found on the duct tape. Now, I've given the court half a dozen cases, two from this court, which, if the court were to follow them, I prevail on that. The government has come back with a half dozen cases also, some, again, from this court. And if the court follows that line of cases, the government prevails on this. And it's really up to the court on that. The one-fingerprint cases, there are cases in both directions. And it depends to a large extent on how much other evidence there was, circumstantial evidence linking Jansen to the Lexington robbery beyond the one partial fingerprint on the duct tape. Now, we do have the Colt .45 handgun, a very valuable handgun manufactured in the 1870s and estimated to be worth $10,000 to $15,000. That was found in the car in which they were stopped in Butner later on. And that car belonged to Thania Woodcock. It was not Jansen's car. There was evidence of Jansen's DNA on it, and I can't deny that. And it was stolen from the coin shop in Lexington in the robbery that we know Jimmy Strayhorn participated in. That is really—and there were coins in a shoebox that Jimmy had talked about in the jail phone calls. And why in the world they didn't stop and think, gosh, they're recording these jail phone calls. I mean, it's simply remarkable. Actually, I thought that the best evidence—not the best evidence— the evidence that was very powerfully in your client's favor, Jansen, was that post-arrest recording conversation. I think so. I mean, I haven't heard the tape, but as I read the transcript, I don't know, it just seems to cut very differently from the way the government wants it to cut. Well, I think you're right. And Jansen was only on three of the jail phone calls. Right. Only three. And the officer who, in his testimony, said he spent dozens of hours listening to those calls and analyzing them. And there were many, many, many such calls. I'm not sure we even know how many. But they went on for several hours. He testified that Jimmy Strayhorn and Thania Woodcock were not at all happy about Jansen's reaction to this idea of committing the coin shop robbery in Butner. And it's not hard to read the phone calls— to read the phone conversations in which Jansen participated and conclude that, you know, I'm willing to go to Butner and try to sell these guns and coins, but a robbery, no thank you. You started out with this whole fingerprint thing, and you mentioned there's— it seems you conceded there are two line of cases here. There are. There's your line of case that essentially says what? Well, Van Fossen— well, first of all, the Ninth Circuit case, Mike's against Borg, the habeas appeal in which the guy's murder conviction was reversed in California. The court said that the record must contain sufficient evidence from which the trier of fact could reasonably infer that the fingerprints were, in fact, impressed at the time and not at some earlier date. The fingerprint analyst in this case testified that he didn't have a fathom of an idea when that fingerprint got on the duct tape. Could have been a long time before. Could, in theory, have been years before. What's the other line of cases? So we've got no evidence on when— and the same thing with this court's decision in Corso. The other line of cases relied on by the government relies more on— and they're all one-fingerprint cases, too, but they rely more on circumstantial evidence, on additional circumstantial evidence that might be construed to indicate involvement of the defendant in it. And obviously they prefer their line of cases, and I prefer mine. But there's no indication— Do you lose if we consider the government's line of cases? On that? If you follow the government's line of cases, do I lose? Yes. Yes, indeed. Because you say that there is some other evidence that links this person to this. There is. The other evidence consists entirely of the presence of the Colt .45 handgun in the Cadillac in Butner, and we don't know if it's the same car that was in the election and robbery or not. But that gun doesn't put him at the crime. No, it doesn't. It doesn't. So what's the other evidence? Well, he was in the car. And the other evidence is the coins that were stolen from the Lexington corn shop that were in the Cadillac in Butner. Does that put him at the— Neither of those put Jensen there. What's the other piece of evidence then? That's it. Well, you say you've conceded. That's enough. Didn't you just tell me if we follow that line, that's enough? Well, if you follow some of the government-cited cases, well, if I conceded it, I didn't mean to. I think you mean to say if we follow the government-cited cases, we'd be committing legal error. Is that what you mean? On this record? You're both putting me pretty rockin' hard, at least. You're awfully candid and an honest lawyer. I think a yes would probably be pretty good for you. I'm simply trying to understand your argument. As I understand, you've got a line of cases that deals with it, so that per se, because it's a fingerprint evidence away from it, that in and of itself cannot be the basis for a conviction. No, it cannot. And then you've got another line that says, okay, you do have this evidence away, but that doesn't end the inquiry. You can connect this up by saying that would allow the inference that he was there because you've got other evidence. But all of the evidence you've indicated here is not evidence that's connected to him being there. No. It's just evidence of something being done, and you have two brothers. Did they not live together? Or weren't they connected in some kind of way? I think they may have lived together. I believe so. I believe they did. Wouldn't that be a little significant? I mean, if you've got one you know who did it. And it wasn't Jansen's car. Now, I will say that the circumstantial evidence, in addition to the one-fingerprint evidence in this case, is nowhere near as strong as in the cases the government cited. And you're right. There's nothing tying Jansen to the gun or the coins or, in my way of thinking, to the robbery in Lexington. And this takes me to the excluded testimony of Kenneth Jones. Kenneth Jones was a defendant in this case who pled and testified for the government in the trial of the two brothers. And he testified that in a conversation he had with Jimmy Strayhorn, Jimmy told him Jansen had nothing to do with the robbery in Lexington, that, in fact, his accomplice in that robbery was a fellow named Devon. And based upon that, he testified, I don't believe he was in there. Do you think that's enough to get that what he believes? No, I don't. But you have to go further than that and ask yourself, what is his belief based on? His belief is based on something. And he testified with Jimmy and Jansen right there in the courtroom in front of him. He said, Jimmy told me Jansen had nothing to do with this, that, in fact, his accomplice in the Lexington robbery was a fellow named Devon. Now, Judge Eagles excluded it, and I wasn't there, but I'm guessing, I'm assuming that she excluded it because Jones was unable to say exactly when the conversation with Jimmy took place, where it took place, what else was discussed. Jimmy was kind of weak on the other details. I mean, Jones was kind of weak on the other details. But he did remember that Jimmy had said unequivocally that Jansen had nothing to do with that Lexington robbery. I don't know why they're charging him. Devon would help me on that, not Jansen. So I really think on the Lexington robbery, and, you know, if Jansen prevails on the Lexington robbery, it's not a get-out-of-jail-free card. He's still got significant time to do here. My time is well up, so I probably ought to quit. I don't know if I'm ahead or not, but I still probably should quit. Thank you. Thank you, Mr. Craven. Mr. Cockrell. Mr. Craven, Mr. Rollman. May it please the Court. First of all, I'd like to thank the Court for accepting the government's corrective brief in this case. It never should have been necessary. I apologize that it was, and I thank the Court for accepting that here. I would like to start briefly about... How did it happen? I mean, that was pretty significant. Yes, it was an error on my part. It was part of the record that I was citing to the trial brief, but not the actual trial transcript. It should not have happened. It was an error on my part, and I apologize for that. I thank the Court for accepting the corrective brief that has the cites to the transcript, and I apologize for any inconvenience that that may have caused the Court in preparation for this case. I would like to address the sentencing issue briefly, and as the Court pointed out, and Mr. Craven, we did file the 28J letter in this case a couple of days ago about the Eileen issue. Do you agree that goes to count two? Yes, Your Honor, it goes to count two. So it's sent back to re-sentencing on count two so you don't have that Elaine issue with count two and count four. Correct, Your Honor. Is that it? That's correct. That's done, isn't it? Yes, Your Honor. And I just wanted to make sure that— So you agree that the maximum is 30 years? No, Your Honor, I agree that the mandatory minimum for the combined 924C counts would be 30 years. There would be five years as a mandatory minimum on count two and then 25 on count four. So the maximum is 30 years? The minimum, Your Honor. You're right, the minimum. Yes, Your Honor. Now that they've been sentenced, it's the maximum, right? Because they can't get more than that. Never mind, never mind, never mind, never mind. I think some of that would be an issue for the district court because she did sentence a little bit above what the minimum was anyway, which is why I'm hesitant to say that that would be the maximum. On count two, they received a little bit more than what was the minimum at that time of seven years. I think it was 96 months or so that they received on count two. So the court would have a little bit of flexibility as to what happens there. But the bottom line is that the issue of the sequence is out of the case because you no longer believe that a seven-year mandatory minimum applies to count two. Yes, Your Honor, that's correct. And I did want to be clear about that. That applies to both defendants. That applies to both defendants, Your Honor. Yes, it does. So the issue in this case we need to be talking about is about this fingerprint. That's right, Your Honor, the sufficiency count. And that applies just to Jansen Strayhorn, Your Honor. Count one and count two. Yes, Your Honor, with those counts. And I would start out by pointing out that the cases that I believe the court should pay attention to in this case are the ones . . . Bound by any particular cases here? Yes, Your Honor, there are cases that the court is bound by. And I would point out . . . The law is already set on this. There's no . . . We can't . . . If there are two lines of cases, we've got to go with that line that you were getting ready to give us, right? Yes, Your Honor. And I don't see competing lines of cases so much. Exactly. The question is, was there sufficient evidence? Yes, Your Honor. Yes, Your Honor. Whether it's one fingerprint or 12 fingerprints. Yes, Your Honor. What is the sufficient evidence here in this case, other than the fingerprint? The fingerprint, as the court mentioned, is one thing. What else you got? As far as that fingerprint goes, I would like to point out that the fingerprint was on the duct tape that bound . . . We got that. What else do you have? The Colt Peacemaker that Jansen Strayhorn was found to be in possession of during the . . . Was stolen in the earlier robbery. It was stolen from the initial robbery. It was a unique firearm that was stolen from the initial robbery. Okay. And also, Your Honor, the car that was being driven, which was co-defendant Woodcock's car . . . Right. Was a white-colored Cadillac. And the car that the two defendants who did the robbery at P&S Coins was described by the victim in that case, Mr. Sims, as a cream-colored Cadillac. Okay. So, that's three things. What else do you have? Yes, Your Honor. The zip ties that were found at P&S Coins that were used to bind . . . Bound where? That were found . . . There are two zip ties in this case that I'll be talking about, Your Honor. So, I don't want to confuse the court on that. Right. But, there's one set of zip ties that was found at the robbery of P&S Coins that was cut from the hands of the victim in that case. And the defendant Jimmy Strayhorn's DNA was found on that. Not Jansen Strayhorn, but Jimmy Strayhorn's DNA was found on that. And then you've got another zip tie. Yes, Your Honor. There's another zip tie that was found. And that zip tie is of the same general type of the zip tie that was used. And that was found in the search warrant that was executed of the residence of Tanya Woodcock. Now, how does that connect Jansen to the earlier robbery? Because Jansen is . . . in a number of ways. First of all, he was in possession of the Colt Peacemaker. No, no, no, no. Come on. We covered those three things. Yes, Your Honor. We're talking about the zip tie. How does the zip tie found at Madame Cole Conspirator's house tie Jansen to the first robbery? You don't contend Jansen lived with her. No, Your Honor. She didn't. Okay. So, how does that zip tie tie Jansen to the first robbery? Because in the phone calls, Miss Woodcock is a co-defendant in the case. Right. She's a co-conspirator in the case. Right. So, the fact that she would have a similar zip tie in her house and that her car was used in the robbery that they were going to commit in Butner, they were borrowing her car and she was a significant part of the plan, it's certainly significant. It's not the most . . . How does any of that tie Jansen to the first robbery? Because they were . . . only in the limited aspect that they were all co-defendants. It's not the strongest piece of evidence in the case, but it is evidence in the case. Okay. What else you got? I would also point out to the court some other items that were recovered from the Cadillac when . . . But everything's in the Cadillac and Jansen's in the Cadillac. Yes, Your Honor. Okay. So . . . And there were . . . But how does Jansen being in the Cadillac for the conspiracy of the Butner robbery tie him to the earlier robbery? Because he's in possession of a firearm that was . . . We already covered that. Yes, Your Honor. We've already covered that. Yes, Your Honor, but that's significant and it's a similar car. But it doesn't become more significant just because you repeat it. I'm trying to understand your list . . . Yes, Your Honor. . . . of circumstantial evidence. Yes, Your Honor. So what else you got? I'd like to move on. Also, the modus operandi in both of the robberies is similar. In the P&S Coins robbery, the one where the fingerprint was left behind in the duct tape in Lexington, there were two males who went into the robbery and did the business. They began their interaction with the victim. Was there a third wheelman in the first robbery? There are two people who went into the store, Your Honor. Right. Was there a third man who was the wheelman? No, Your Honor. Not that we're aware of. Okay. Now, isn't there evidence in the record that Jansen did not intend to go into the Butner robbery? There is one part of the phone call, Your Honor. Yeah, he says, I'm not going in. Yeah, he says, I'm going to get some other people to go in, but I don't want to go in and see the man, I think is the way he phrases it or something along those lines. Right. And that was a part of the conversation. But in the end, they were only able to come up with one other person, and that was Kenny Jones, who also testified in this case. And I think that the similarities in the modus operandi of the robbery that was carried out and the robbery that was going to be carried out is certainly significant in this case as far as the circumstantial evidence goes, because they began their interaction with the victim in that robbery by speaking to him about coins to make it appear as though they were there for legitimate business. And then one of the defendants took out a gun, pointed it at his head, and they bound him up and stole items from his store. And during the phone calls that Jimmy Strayhorn was having when he was planning the robbery with Ms. Woodcock, he said, you know, make sure that they know to go in there and have a coin or bring something in there with them and talk to them as though they're going to start doing business. Jansen wasn't a part of that conversation. I don't believe he was, Your Honor, but they were all talking to each other. And so I think that that certainly is significant. And they did have in the car with them, there was a roll of $2 bills, there were various little coins, so they had items that could be used for that purpose that were along with them. I do think, Your Honor, there were a few other items that were found in the search of Ms. Woodcock's residence that are interesting to the court in this case. There was a coin that was found that the victim from the P&S robbery was able to identify as having come from his store. So there's no question you had sufficient evidence against her. Yes, Your Honor. The question here is did you have sufficient evidence against him, him being Jansen? Yes, Your Honor, and I agree that that evidence isn't as strong as, say, like the Colt revolver is or the fingerprint is. I'm not sure how strong the Colt revolver evidence is. There's no question you could find a lot of federal judges who would say, if you're in possession of stolen property, for some federal judges that's enough to prove you were involved in the theft and some state judges, but for a lot of judges that's not going to be enough, mere possession. And here you have the gun in the car, not in the personal possession of Jansen. So I'm not sure how far the presence of the gun from the first robbery gets you. Maybe you want to address that. Yes, Your Honor, and for starters, I think it's important to point out that we're reviewing the evidence in the light most favorable to the government in this case. So we're entitled to every inference, reasonable inference that can be made from the evidence here. And the Colt revolver can't be looked at just in the isolation of where it was found, although that is important. But also the fact of the fingerprint that we've already talked about, the fact that Jansen Strayhorn left his fingerprint behind on the duct tape and he's in possession of the proceeds of the robbery, or we could argue that he would be in possession of it, is significant. The jury was able to consider all of those arguments, and they found that he was... I'm sorry, this Colt revolver was stolen in the first... Yes, Your Honor. And I think Mr. Craven said it was worth several thousand dollars. Yes, Your Honor. Why wouldn't they have used the weapon that was used in the first robbery in the Butner robbery? And I addressed this in the brief, Your Honor, as well. Remind us. There is no evidence in the record that the defendants knew what they had in terms of this firearm. It's a rare firearm. My question is, they did use a firearm in the Lexington robbery. Yes, Your Honor. They had a firearm when they did that robbery, whoever they were. Yes, Your Honor. Why wouldn't they have used that firearm in the Butner robbery? Your Honor, there were two firearms that were in the car with them. The firearm that we've been talking about was the firearm that was stolen, the Colt Peacemaker. That's right. And then there was a second firearm, which was also a Colt but a different firearm, a Colt Trooper .357 caliber that was in another bag that was also in the back passenger area of the car. And the victim of the original robbery was able to identify it as a large revolver that was pointed at him, something along those lines. So you think that might have been the gun? It may have been the gun, but we can't say specifically that it was. But the short answer is they had a gun similar to the one that was used in the robbery. Why do you think one gun would have been hidden in the car and the other gun was not, if I have those facts right? They were both in bags. They were in different bags that were in the back seat of the car. And the co-defendant, Jones, who was in the passenger seat of the car, had ammunition in his sock that would have functioned in the other gun that was recovered, the Colt .357. So I think that's an important point. The stolen Colt was loaded? No, Your Honor, the stolen Colt was not loaded. Neither gun was loaded when it was found. There was live ammunition on the one co-defendant, Mr. Jones, but neither gun was actually loaded. And the point that I was making also about the gun, and I don't know if Your Honor was asking specifically about this or not, but there's no evidence that the defendants knew that the Colt peacemaker that they had was in fact a collectible item and was of value. You probably have to be a gun collector to know something like that. And we had an expert from ATF testify about what the gun was and its value. And there's nothing from those calls when they were trying to come up with ways to come up with money to get Jimmy Strayhorn out of jail where they're aware that this gun is not good. That Jansen was in a photo array, correct? Yes, Your Honor, he was. And negative result? That's correct. That's correct. There's not a good identification. So you think, is there anything else we haven't left out, that we've left out? I would also point out, and this goes along with the modus operandi, Your Honor, is that the evidence in the Butner robbery is overwhelming. And the conspiracy that was done was including Jimmy Strayhorn and Jansen Strayhorn to commit that offense. And Jimmy Strayhorn is, without question, the person who was involved in the first robbery. And he was convicted on that. I was trying to focus on Jansen. Yes, Your Honor. So is there anything else on Jansen on the first robbery? I would point out to the court that he was planning the same robbery with the person who had done the second robbery, who had done the first robbery also. And that's probative evidence of his involvement in the first robbery? It is, Your Honor. Is the fact that it's his brother, is that probative evidence that he was involved in the first robbery? I don't think necessarily just that they're brothers. More so that they're co-conspirators, I would say, would be more important. And I would point out, Your Honor, that they did not live together. So all of what you've now summarized, and I appreciate that, is sufficient to prove beyond a reasonable doubt that Jansen was involved in the first robbery? Yes, Your Honor, without question. And when you look at the cases from this circuit that deal with fingerprint evidence on movable objects, and the times where this court has said that the evidence was not sufficient were cases where the evidence that the government had and the only evidence that the government had. Let me ask you about that. Yes, Your Honor. You've got to start with the first base, and that is that you're dealing with fingerprint evidence on a movable object. So that indicates you don't, that is no evidence of when it was put on that tape. There's no evidence of that. Is that correct? There's no direct evidence of when it was put there, Your Honor, I would say. There's no evidence as to when it was put on the tape. Yes, Your Honor. Theoretically, it could have been put on at any time. There's some evidence that makes it look bad and makes it look like it's possible and in light most favorable, but does that add up to be evidence that's sufficient to find beyond a reasonable doubt? You have to stay with that standard. This in light most favorable gets you the evidence, but once you get that evidence, that evidence has to be sufficient to withstand the higher burden here, beyond a reasonable doubt, and you don't have evidence that he's at the scene based upon the tape because the tape is movable. Just on the tape itself, Your Honor, first of all, I would say it's important to note that the tape isn't just a roll of duct tape that was found at the scene. It was the actual tape that found the victim's legs and was cut from his legs, and I think there's some probative value to that that the court should look at. But the cases where this court has found that from a legal standpoint, that fingerprint evidence on a movable object was insufficient were cases where the only evidence that existed against that defendant was the fingerprint on the movable object, and there are other cases where even circumstantial evidence. I don't even think a case like that reaches us. I mean, really, if you have a case where the only thing is a fingerprint, I don't think there's a federal district judge in this circuit who would not grant a motion for judgment of acquittal. So it can't be the case that the only cases that we've considered are cases where the fingerprint was the only evidence, right? Yes, Your Honor, and let me make that clear. Look, I'm as guilty as anybody of overstating things perhaps, but I mean, obviously for a federal district judge to deny a motion for judgment of acquittal at the close of the government's case, there's going to be enough there for that judge to say, I think it's sufficient. And the case comes up here. We take a look at it, exercising our responsibilities. We may from time to time reach a different conclusion. So there's always going to be evidence to persuade at least one judge that the evidence is sufficient. Right. So the question in this case is, is that one of those cases? Is it enough to persuade one judge or is it enough to persuade more than one judge? Right. Yes, Your Honor. I understand the court's point there. And the two cases that I was referring to where the evidence was just a fingerprint were Van Fossen and Corso. And both of those cases are from the early 70s. And I haven't seen another case that has come up on appeal since then, where the evidence was, as Your Honor just said. Were they both drug cases? Van Fossen, Your Honor, involved a forgery case and there were prints on engraving plates. Right. And there wasn't enough to prove intent or perhaps even possession based on that. And then Corso involved a breaking and entering case where there were prints that were left on a matchbook that was used to jam a lock. And if you read those cases, there really is practically nothing else. I mean, I think in one of those cases, someone tried to spend some money afterwards or something like that. But, you know, it wasn't, it really wasn't a lot. There wasn't a lot. There's much more in this case. And the other cases that have been dealt with since then where there's some evidence and sometimes it's just circumstantial evidence, but it's been held to be enough. And it's important, I think, to note that the law does not differentiate between direct evidence and circumstantial evidence when it comes to the weight that they're given in this case. And, you know, we are entitled to every reasonable inference that can be made based on the evidence. And a lot of the things that we're talking about today are things that were argued to the jury in closing arguments by both sides. And the jury found that it was sufficient in this case. And the evidence that's been presented here is certainly. What did the judge say when denying the motion for judgment? Do you recall or? I remember that she denied the motion, Your Honor. But did she say anything? Did she express doubt or concern or skepticism or? No, Your Honor. You just said denied. It was denied. There was no doubt or concern or skepticism on her part. Thank you, Your Honor. And for the reasons, I see my time is about up here. For the reasons presented at the oral argument and brief, I'd ask that the court be remanded for the specific issue of resentencing on count two. And I'd ask that the district court be affirmed on the other grounds. Thank you. Thank you, Mr. Cochran. Mr. Craven, you have a little time left. Your Honor, just two things. There is no evidence as to when Jansen's partial fingerprint was placed on that duct tape. No evidence whatever. There is, as the government suggested, also no evidence that Jansen or Jimmy or any of the other folks involved in this case, Kenneth Jones and Thaney Woodcock, had any idea how valuable that Colt .45 Peacemaker revolver was. We now know that it's valued at something between $10,000 and $15,000. So it could have, if sold, have produced a nice sum of money that might have helped get Jimmy out of jail. There is no evidence, however, that they didn't know how much it was worth. Maybe they all watch Antiques Roadshow, as I do. You know, maybe they did know what it was worth. We can only speculate there. Also, I want to emphasize, as Judge Davis and Judge Davis helped me emphasize it a few minutes ago, that the victim in the Lexington coin robbery was shown a photo array, and he picked Jimmy out. He didn't have any trouble picking Jimmy out, but he sure didn't find Jansen in there. He didn't pick Jansen out at all. And finally, and I hope this isn't muddying the waters some more. I thought we were all on the same page, but I was just looking at the Rule 28 letter filed the day before yesterday, and the last sentence of it says that the government requests this court remand for consideration in light of Elaine as to counts 2 and 4. So, again, we're going back and forth on that, and I admit I find it confusing. So there we have it. Certainly, the court should remand for some degree of reconsideration on at least count 2. And I believe that Jansen— You had to consider count 4 with Elaine because you needed two counts. You needed to use and you needed to brandish it. Well, maybe that's what— Take away the brandishing of count 2. You only just deal him a count 2. Maybe that's what— I don't know what the problem is. That's probably what they meant in the letter. So what else could it mean? Well, I suppose, but, you know, one of the courts said earlier that they found the letter ambiguous, and I did too. I think Mr. Cochran made it clear on the record that the 7-year sentence, mandatory minimum sentence, is no longer in play. No longer. Okay, so we are on the same page on that. That was very clear. Yeah, and I think Jansen should be relieved of responsibility for the Lexington robbery. I think absolutely that's the case. Right. And I'll quit again unless the court has any further questions. I don't think there are further questions. Mr. Craven, we note that you have been court-appointed. We'd like to especially thank you for your service. Thank you, sir. Indeed, it serves to the court. And also we'd like to thank Mr. Cochran. Well, you're steeped in Fourth Circuit history for many ways, consanguently. Which inflation adjusted is probably more than they pay today. You want to take a break? I'm okay. You okay with that? Fine. All right, we're going to come down to Greek Council and then tend to our last case for the day.
judges: Roger L. Gregory, Andre M. Davis, James A. Wynn, Jr.